THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KRISTI LOSCHEN, | ) | 4:08CV3143 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| TRINITY UNITED METHODIST | ) | |
| CHURCH OF LINCOLN, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Kristi Loschen brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. §§ 48-1101 to 48-1125, claiming that her former employer, the Trinity Infant and Childcare Center at Trinity United Methodist Church of Lincoln, discriminated against her by terminating her employment because of a perceived disability and by disclosing confidential medical information to parents, co-workers, and prospective employers. Defendant Trinity has filed a motion for summary judgment (filing 32). For the reasons set forth briefly below, I shall deny the defendant's motion.

The Eighth Circuit Court of Appeals has stated that "summary judgment should be used sparingly in the context of employment discrimination . . . where direct evidence of intent is often difficult or impossible to obtain." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1117 (8th Cir. 2006) (citing cases). However, the Court of Appeals has also stated that "no separate summary judgment standard exists for discrimination or retaliation cases and that such cases are not immune from summary judgment." *Id.* at 1118 (citing cases).

> [A]lthough Rule 56 contains only one standard, we must exercise *particular* caution when examining the factual question of intent to ensure that we dutifully extend all justifiable inferences in favor of the non-moving party. Where reasonable fact finders could extend an inference in favor of the non-moving party without resorting to speculation, we may not declare the inference unjustifiable simply because we might draw a different inference. Viewing the evidence as a whole, and in this deferential light, we must deny summary judgment where a reasonable jury could find in favor of the non-moving party.

*Id.* (italics in original & internal citations omitted).

### *Termination Claim*

After a thorough review of the parties' briefs and evidence submitted in conjunction with the defendant's motion for summary judgment, it is clear that a reasonable jury could find in favor of the non-moving party, Kristi Loschen. Loschen has filed evidence sufficient to establish that (1) Trinity mistakenly believed[1] that Loschen had a seizure disorder which substantially limited the major life activity of working—that is, that Loschen was significantly restricted in her ability to perform jobs involving child care[2]; (2) Loschen was qualified to perform

---

[1] This is a "regarded as disabled" case under the ADA. I have previously decided that the ADA Amendments Act of 2008, (Pub. L. No. 110-325, 122 Stat 3553), which amends the definition of "regarded as," is not retroactively applicable. *Rickert v. Midland Lutheran College*, No. 8:07CV334 (D. Neb. Sept. 2, 2009) (Filing 78).

[2] *See Justice v. Crown Cork & Seal Co., Inc.*, 527 F.3d 1080, 1091 (10th Cir. 2008) (premature to grant summary judgment on ground that employer did not regard plaintiff as disabled under ADA when reasonable jury could conclude that employer thought plaintiff's balance problems substantially limited his ability to perform the

2

the essential functions of her job; and (3) Trinity terminated Loschen's employment because of her perceived disability. *Willnerd v. First Nat'l Nebraska, Inc.*, 558 F.3d 770, 778 (8th Cir. 2009) (evidentiary showing required at prima facie stage of ADA claim is "minimal"); *Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982, 988-991 (8th Cir. 2007) (elements of ADA "regarded as" claim).

Loschen admits that Trinity has met its burden of production to articulate legitimate nondiscriminatory reasons for Loschen's termination—her poor attendance record, alleged lack of stamina, supposed failure to adequately communicate with parents, and alleged failure to follow company policy for maintaining sanitary conditions. (Filing 34, at 14.) Thus, the burden of proof shifts back to Loschen to prove pretext by discrediting Trinity's stated reasons for terminating her, and by showing circumstances raising a reasonable inference that the real reason for her discharge was her perceived disability. *Willnerd*, 558 F.3d at 778. As to the latter showing, Loschen must establish "a genuine issue of material fact as to whether [Trinity] actually fired h[er] because of h[er] [perceived] disability." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999).

The ultimate question is whether Loschen has presented evidence of "'conduct or statements by persons involved in [the employer's] decision-making process reflective of a discriminatory attitude sufficient to allow a reasonable jury to infer that that attitude was a motivating factor in [the employer's] decision to fire [the plaintiff].'" *Id.* (brackets in original) (quoting *Feltmann v. Sieben*, 108 F.3d 970, 975 (8th Cir. 1997)).

---

class of jobs constituting electrical work).

Loschen has discredited Trinity's stated reasons for her discharge by producing evidence that those reasons are not based in fact, that a key decision-maker (Trinity's director) harbored a discriminatory attitude, and that the director took action based on her unfounded suspicion that Loschen had a seizure-related disability. (*See* Filing 40-6, Aff. Dr. Marple (Loschen's seizure in October 2005 was isolated episode secondary to medication and low calcium level; medication has been discontinued and other medications adjusted to avoid calcium deficiency; Loschen released to work with no medical restrictions; Trinity director asked Dr. Marple for "guarantee that [plaintiff] would not have a seizure"; Dr. Marple communicated to Trinity's director that seizure should not recur; one week later, Loschen terminated); Filing 40-7, Aff. Deanna Turner, at CM/ECF p. 13 ("I wouldn't want her to pick up a child and faint, you know, and a child fall out of her arms, hit their head."), pp. 32-34 (discussing favorable parent evaluations of Loschen); Filing 40-21, at CM/ECF p. 7 (favorable parent review of Loschen in 2002); Filing 40-22, at CM/ECF pp. 9, 11, 13, 33 (favorable parent reviews of Loschen in 2004); Filing 40-23, at CM/ECF pp. 6, 18, 32 (favorable parent reviews of Loschen in 2005); Filing 40-24, at CM/ECF pp. 4-7 (only evaluation of Loschen by Trinity in 2003; items needing improvement were related to communication with parents and children, attending inservice, and helping others grow into stronger teachers); Filing 40-29, Def.'s Answers to Pl.'s Interrogs., at CM/ECF pp. 12-13 (Trinity director and assistant visited Loschen in hospital after seizure and "expressed a fear that if Plaintiff had a seizure while driving the children, as she had been scheduled to do on Monday [the day following her seizure], there could have been an accident. Additionally, if Plaintiff had been pushing a stroller she could have let the stroller go into the street."; six days later, Trinity director and assistant met with Loschen to discuss "how important it was to meet with her doctor to get more information so they would be sure it would be safe for her to return to work."); Filing 35-3, at CM/ECF p. 57 (when Loschen returned to work

4

after seizure, Trinity director assigned her to office work and did not allow her to perform her prior childcare job); Filing 40-8, at CM/ECF p. 17 (letter dated October 31, 2005, terminating Loschen's employment); Filing 35-5, at CM/ECF pp. 4-5 & Filing 35-3, at CM/ECF pp. 41-44 (Loschen absent many hours since 2001 for kidney and thyroid issues, but Loschen not terminated until she had seizure).)

While there is much credible evidence countering the above-described evidence[3], Loschen has produced enough to create a jury question as to pretext and discriminatory animus, and Trinity's motion for summary judgment on the termination claim must therefore be denied.

### *Disclosure of Confidential Medical Information*

Loschen alleges that Trinity violated the ADA by disclosing confidential

---

[3]*See* Filing 35-6, at CM/ECF pp. 4-12 (Loschen's excessive absences and tardiness caused lack of continuity of care for children; Trinity director observed Loschen's declining physical stamina; Trinity director spoke with Trinity pastor in August 2005, two months prior to Loschen's seizure, regarding Loschen's "performance issues"; at an October 19, 2005, staff meeting, Loschen told staff that her "greatest challenge was getting to work and her greatest reward was just making it through the day."); Filing 35-6, at CM/ECF p. 15 (Trinity previously employed an epileptic day care provider who had a seizure in his classroom and was unable to continue working for Trinity because of his inability to lawfully drive; provider was rehired some time later for four months); Filing 35-8 (Loschen's absences caused behavior changes in children; co-worker observed declining energy and stamina in Loschen in 2003; co-worker received parent complaints about Loschen's absences, lack of energy, and "cutting corners"); Filings 35-11 & 35-12 (affidavits from parents who were dissatisfied with Loschen's performance); Filing 35-6, at CM/ECF p. 16 (Trinity had history of assisting Loschen with medical problems, including holding fundraisers so Loschen could receive a kidney transplant).

medical information about her seizure to parents, co-workers, and prospective employers. The ADA's prohibition against discrimination includes making "inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such . . . inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(1) & (4)(A). *See also* Neb. Rev. Stat. § 48-1107.02(10). "A covered entity may make inquiries into the ability of an employee to perform job-related functions," 29 C.F.R. § 1630.14(c), but information obtained as a result of such inquiries "is to be treated as a confidential medical record." 29 C.F.R. Pt. 1630, App. (comments under section 1630.14(c)).

To prevail on this claim, Loschen must show that "the disclosed information was confidential and that [s]he suffered some kind of tangible injury as a result of the disclosure." *McPherson v. O'Reilly Automotive, Inc.*, 491 F.3d 726, 732 (8th Cir. 2007). To demonstrate that it has complied with 42 U.S.C. § 12112(d)(4)(A), "the employer bears the burden to show the asserted 'business necessity' is vital to the business and the . . . inquiry is no broader or more intrusive than necessary." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

Loschen has filed evidence creating a genuine issue of material fact regarding whether Trinity made inquiries of Loschen and her physician regarding the nature or severity of her perceived seizure-related disability. Trinity admits that its director and assistant met with Loschen to discuss "how important it was to meet with her doctor to get more information so they would be sure it would be safe for her to return to work." (Filing 40-29, Def.'s Answers to Pl.'s Interrogs., at CM/ECF pp. 12-13.) There is evidence that the Trinity director, in a telephone conversation with Loschen's physician, inquired of the doctor whether he could "guarantee that [plaintiff] would not have a seizure." (Filing 40-6, Aff. Dr.

6

Marple.)

The evidence also shows that Trinity maintains a "log book" that contains notations about daily events, including absences, phone messages, parent questions, and other items. The log book is available to, and used by, the directors, bookkeeper, and all teachers at Trinity. The October 2005 log book contained many details about Loschen's seizure that could have been the result of inquiries Trinity made of Loschen regarding the nature and severity of her perceived disability: "dr. thinks she may have had a seizure"; "Kristi admitted to hospital today. ER last night another episode—stroke/siezure [sic]. Doing tests. in hospital 2-3 days[.] calcium is too low—can cause seizures. also a med. she is on can cause seizures. They think she prob. had a seizure on Sunday. MRI in E.R. didn't see anything[.] OK for visitors[.] dialysis early Th. AM."; and "Kristi out of hosp. Mon. PM. Dialysis Tues. then Home visit." (Filing 40-7, at CM/ECF pp. 19-27; Filing 40-20, at CM/ECF pp. 2, 4, 11.)

Loschen has also created a genuine issue of fact regarding whether confidential medical information gleaned from these inquiries was disclosed to others. Following Loschen's seizure, and in addition to making the notations regarding the seizure in the log book that was available to the Trinity staff, the Trinity director and assistant director sent a note to the families for which Loschen provided child care stating, "This past weekend Kristi became ill and was brought to the hospital. She was admitted and is still in the hospital having some tests done. As of today she is in pain and is feeling weak." (Filing 40-26, at CM/ECF p. 15.)

The evidence also establishes that after Loschen was terminated from Trinity, she applied for jobs at ten different employers, all of whom failed to hire

7

her. "Sometimes I would get . . . second or third interviews. And by the second or third interview, they seemed to know a lot about my situation with Trinity. . . . That I was fired from there and that I had a medical issue." (Filing 40-4, at CM/ECF, at pp. 9-10 & 11 (Loschen had third interview and did "trial" work with one prospective employer and "they were very interested in [Loschen]. And then all of a sudden, they just had no interest after they called references.").) This is enough to create an issue of material fact with respect to whether Trinity disclosed confidential medical information to Loschen's prospective employers and whether such disclosure caused those employers to make hiring decisions adverse to Loschen.

As far as injury suffered as a result of the disclosure of confidential medical information, Loschen states that she sought counseling after the loss of her job at Trinity, and she has "suffered emotional distress over the Defendant's disclosure of [her] confidential medical information to [her] co-workers, parents of the children whom [she] taught, and p[ro]spective employers, which has prevented [her] from finding employment."[4] (Filing 40-5, at CM/ECF p. 6.)

While it is entirely possible that Trinity's inquiries (if any) regarding the nature or severity of Loschen's perceived seizure disorder were "job-related and consistent with business necessity," and therefore permissible under 42 U.S.C. § 12112(d)(4)(A), Trinity does not make that argument at the summary judgment stage, creating yet another basis for denial of its summary judgment motion on this claim. (Filing 34, at 29-34.) *See Lanxon v. Crete Carrier Corp.*, 2001 WL 1589627, at *11 (D. Neb. Dec. 13, 2001) (because defendant failed to argue and

---

[4]Loschen was employed at the time of her deposition, but she apparently claims that the disclosure of confidential medical information delayed her finding employment, resulting in damages.

show that its inquiry regarding plaintiff's disability was job-related and consistent with business necessity, motion for summary judgment would be denied; "as the defendant failed to make the proper argument, the plaintiff has not been alerted to present evidence (or refer me to evidence) demonstrating that there is a genuine issue whether Dr. Acklie's inquiry was job-related and consistent with business necessity").

As there are several genuine issues of material fact regarding Loschen's wrongful disclosure claim, I shall deny Trinity's motion for summary judgment on this claim as well. Accordingly,

IT IS ORDERED that the defendant's motion for summary judgment (filing 32) is denied.

DATED this 9th day of September, 2009.

BY THE COURT:
*Richard G. Kopf*
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.